IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION
CIVIL ACTION NO. _____

| | |
|---|---|
| 4318 MEDICAL PARK DRIVE, LLC; and SSS HOLDINGS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> SELECTIVE INSURANCE COMPANY OF AMERICA, <br><br> Defendant. | **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |

**NOW COMES** Plaintiffs 4318 Medical Park Drive, LLC ("Medical Park") and SSS Holdings, LLC ("SSS Holdings") (collectively, "Plaintiffs"), by and through undersigned counsel, to complain of the Defendant by alleging and saying as follows:

## PARTIES

1. Plaintiff Medical Park is a company existing under the laws of the State of North Carolina with its principal place of business in Raleigh, North Carolina.

2. Plaintiff SSS Holdings is a company existing under the laws of the State of North Carolina with its principal place of business in Mooresville, North Carolina.

3. At all times relevant hereto, Plaintiffs owned and operated the Marketplace at Perimeter Park Shopping Center, located at 10970 Chapel Hill Road, Morrisville, NC 27560 (the "Property").

4. Defendant Selective Insurance Company of America ("Defendant Selective") is a company existing under the laws of the State of New Jersey, with its principal place of business in

Branchville, New Jersey. At all times relevant to this Complaint, Defendant Selective was transacting substantial business in North Carolina.

## JURISDICTION & VENUE

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6. The Defendant is subject to personal jurisdiction in this District.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, or omissions giving rise to the underlying claim and questions surrounding coverage under the policy of insurance at issue occurred there.

## FACTUAL ALLEGATIONS

8. On or about September 25, 2020, a severe weather system moved through the Raleigh area. The line of thunderstorms produced large hail, damaging property in its path. The Property experienced hail damage as a result of these storms.

9. Thereafter, Plaintiffs made a claim for damages including, among other things, damage to the roofing structure and HVAC unit, which was assigned Claim No. #22177654 (the "Claim").

10. At all times relevant to this Complaint, the Property was insured by Defendant Selective under a Selective Commercial Insurance Policy, Policy No. S 219337304 (hereinafter the "Policy") (**Exhibit A**).

11. Pursuant to the Business and Personal Property Coverage Form, Defendant Selective "will pay for direct physical loss of **or** *damage* to Covered Property at the premises

described in the Declarations caused by or resulting from any Covered Cause of Loss." **Exhibit A** at p. 55 (emphasis added).

12. The Property is a "Covered Property" under the Policy Declarations.

13. Hail damage to the Property and its roofing structure is a Covered Causes of Loss under the Policy.

14. Plaintiffs timely paid all premiums for the Policy, and the Policy was in full force and effect on September 25, 2020.

15. In connection with the hail claim, Plaintiffs retained Michael Lindhurst ("Mr. Lindhurst") of C3 Group, Inc. ("C3 Group") as their public adjuster and Will Jordan ("Mr. Jordan) of Ready Roofing as their roof consultant to inspect the Property and to assist with adjustment of the Claim.

16. On or around October 28, 2020, C3 Group conducted an inspection of the Property and found damage to the roofing structure. C3 Group concluded that, given the roofing components, total replacement was necessary to return the roofing structure to its pre-loss condition.

17. C3 Group provided a repair estimate for the damage, which was shared with Defendant. *See* Insured's Letter dated May 5, 2021 (**Exhibit B**) at C3 Group Estimate. The estimate indicates that the entire value of the Claim, including damage to the Property's roof and HVAC unit, had an actual cash value (ACV) of $511,777.03. Of that total, C3 Group estimated that the damage to the roofing structure had an ACV of $353,493.03.

18. Defendant Selective retained Allan Kidd ("Mr. Kidd") of HiMark Roof Consulting ("HiMark") and Andy Porth ("Mr. Porth") of Clyde Nettles Consulting to inspect the Property and to assist with adjustment of the Claim.

19. On January 7, 2021, a joint site inspection occurred to allow HiMark an opportunity to inspect damage to the Property, and HiMark prepared a report concerning its observations (**Exhibit C**).

20. The HiMark report indicates that there were voluminous indentations, physically discernible through touch, in the roof that were caused by hail. Further inspection was performed—a test cut of the membrane was conducted—which uncovered additional damage to the roofing structure: breaks in the facer board and insulation.

21. That notwithstanding, the report subjectively concludes that the damage was "inconsequential" and that it did not warrant roof replacement.

22. Damage to the underlayment of the roofing structure is not noted as an exclusion to, or a limitation of, coverage.

23. The Policy is devoid of an endorsement that would waive coverage for cosmetic damage.

24. Similarly, the Policy does not include a sufficiently limited definition of the terms "loss" and/or "damage" to warrant exclusion based on an assessment of functionality.

25. Regardless, Selective has since denied Plaintiffs' Claim regarding the damage to the roofing structure, indicating that there is no direct physical "loss" to the Property's roof.[1] This conclusion misapplies key Policy terms that require coverage where there is "*damage*" to the Property, and denial based upon the damage being to an underlayment of the roof is unwarranted and not based upon any language set forth in the Policy or its endorsements.

26. Both parties' roofing consultants concluded that physical changes and damage occurred to the roofing structure from hail impact.

---

[1] As of the filing date, adjustment of the Claim regarding the HVAC damage is ongoing, and the Parties have agreed that this portion of the Claim is the subject of an ongoing Appraisal.

27. On May 5, 2021, at Defendant Selective's request, Plaintiffs prepared a Sworn Statement in Proof of Loss (the "Sworn Proof of Loss") (**Exhibit B** at Sworn Proof of Loss). Supporting documentation was attached thereto, including the C3 Group's estimate.

28. The Sworn Proof of Loss was submitted to Defendant Selective that same day. *See id.*

29. Defendant Selective has not conducted further inspections, nor has it offered an alternative cost to return the roofing structure to its pre-loss condition.

30. Despite continued efforts on Plaintiffs' part to adjust the Claim, Defendant Selective continues to deny coverage for damage to the roof caused by hail.

31. Defendant Selective has failed to make proper payment of the Claim or to do anything further to adjust the Claim. Instead, Defendant has compelled the insured, the Plaintiffs, to file the instant litigation.

32. Without payment of the Claim, and as a result of Defendant Selective's delay tactics and repeated, and unreasonable denials, Plaintiffs have incurred, and will continue to incur, significant expenses, property depreciation, attorney's fees, litigation costs, and other expenses and damages.

33. At all times, Plaintiffs made themselves and the Property available to Defendant Selective, its agents, and its representatives and fully cooperated with Defendant Selective, its agents, and its representatives to inspect and investigate the damage caused by the hail.

34. Defendant Selective has failed to provide a reasonable basis for its failure to pay the amounts set forth in Plaintiffs' Sworn Proof of Loss or for its protracted investigation and unreasonable positions taken in the adjustment of Plaintiffs' Claim.

35. At all times throughout the investigation of the Claim, Plaintiffs complied as promptly as possible with every request made by Defendant Selective for information regarding the Claim and have otherwise fulfilled all conditions precedent and contractual obligations under the Policy prior to the filing of this lawsuit.

36. Plaintiffs have done everything in their power to mitigate damages and to prevent further damages as a result of the Property's compromised roofs.

37. Plaintiffs repeatedly provided all information and documentation relevant to Plaintiffs' contention that full roof repairs are necessary and covered under the Policy. Such information was not provided reasonable consideration by Defendant Selective. As such, Plaintiffs continued to expend time, energy, and resources to provide estimates, reports, and further information in support of the Claim. However, in reality, Defendant Selective had no interest in reviewing new facts or information and did not in fact consider any additional documents or information provided by Plaintiffs.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

38. Plaintiffs reallege and incorporate the preceding allegations as if fully set forth herein.

39. The Policy constitutes a contract between Plaintiffs and Defendant.

40. Defendant breached the Policy and purposefully attempted to deny Plaintiffs their benefits under the Policy in that it:

    a. Purposefully and repeatedly adhered to a baseless position as to the coverage for the Claim, despite overwhelming evidence that physical changes and damage occurred to the roofing structure from hail impacts;

b. Acted intentionally in delaying the adjustment of Plaintiffs' Claim, in taking unreasonable positions as to the Claim, and in purposefully providing little to no explanation for refusing to adjust the Claim, all to deny Plaintiffs their benefits under the Policy;

c. Repeatedly invited Plaintiffs to submit further evidence as to coverage for the Claim, at their own expense, only to refuse to review such evidence or incorporate it into the adjustment of the Claim;

d. Repeatedly and baselessly alleged that the reports, estimates and other evidence from Plaintiffs' expert and its own expert had no substantive impact on coverage and on the value of the Claim without any explanation or reasoning as to why they had no substantive impact;

e. Purposefully engaged in various delay tactics intended to frustrate Plaintiffs' efforts to resolve the Claim, all in an attempt to pressure Plaintiffs into foregoing seeking payment on the Loss, to deny Plaintiffs their benefits under the Policy, and to force Plaintiffs to initiate this litigation to recover the amounts owed under the Policy;

f. Generally, refused to pay the Claim when it was due under the Policy; and

g. Otherwise breached the terms of the Policy, as Plaintiffs will demonstrate at trial.

41. As a direct and proximate result of Defendant's breach of the Policy, Plaintiffs have been damaged in an amount in excess of this Court's jurisdictional threshold of $25,000, and Plaintiffs are further entitled to consequential and contractual damages as proven through discovery and trial.

42. Plaintiffs are entitled to prejudgment interest at the legal rate of 8%.

## SECOND CLAIM FOR RELIEF
### Breach of the Covenant of Good Faith and Fair Dealing

43. Plaintiffs reallege and incorporate the preceding allegations as if fully set forth herein.

44. Defendant's conduct alleged herein was in bad faith and in violation of the covenant of good faith and fair dealing implied by law into the Policy.

45. Defendant's conduct, actions, omissions and refusals to timely and promptly adjust and pay the Claim constitutes bad faith. A nonexclusive list of Defendant's bad faith includes:

   a. Misrepresenting pertinent facts relating to coverage at issue, particularly regarding coverage for the Claim;

   b. Failing to acknowledge and act reasonably promptly upon communications with respect to the Claim;

   c. Purposefully and repeatedly adhering to a baseless position as to coverage for the Claim, specifically regarding the scope of coverage, despite overwhelming evidence that physical changes and damage occurred to the roofing structure from hail impact and that the Claim was covered and worth over $400,000.00;

   d. Failing to acknowledge and act reasonably promptly upon evidence from Defendant's own expert concerning damage to the roofing structure;

   e. Repeatedly inviting and requesting Plaintiffs to spend their time and money gathering estimates, reports, and other evidence for coverage of the Claim, only to completely ignore such evidence and continue to deny the Claim;

   f. Refusing to provide reasonably prompt and clear communications as to why Plaintiffs' estimates, reports, and evidence did not support coverage for the Claim;

    g.  Failing to conduct a reasonable investigation of the Claim;

    h.  Purposefully engaging in numerous delay tactics in order to pressure Plaintiffs to forego pursuing full payment of the Claim and eventually forcing Plaintiffs to initiate this lawsuit in order to recover the amount that is owed on the Claim;

    i.  Failing to act in good faith to effectuate prompt, fair, and equitable settlement of the Claim, despite liability under the Policy being reasonably clear;

    j.  Misusing its power and authority in such a way to be tantamount to outrageous conduct; and

    k.  As will otherwise be shown through discovery and trial.

46. As a proximate result of Defendant's breach of the covenant of good faith and fair dealing, Plaintiffs have been damaged in an amount in excess of this Court's jurisdictional threshold of $25,000. Additionally, Plaintiffs are entitled to recover punitive damages from Defendant for the above-described conduct, which was willful and wanton, in the maximum amount permitted by law.

## THIRD CLAIM FOR RELIEF
### Unfair Claims Settlement Practices
### And Unfair & Deceptive Trade Practices

47. Plaintiffs reallege and incorporate the preceding allegations as if fully set forth herein.

48. The conduct of Defendant constitutes unfair claims settlement practices that violate one or more of the subparts of N.C.G.S. § 58-63-15(11), and Unfair & Deceptive Trade Practices in violation of Chapter 75 of the North Carolina General Statutes, including, but not limited to:

    a.  Misrepresenting pertinent facts or insurance policy provisions relating to the coverage at issue;

b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e. Failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed;

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

g. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amount actually due to such insured;

h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

i. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

j. Purposely failing to act in good faith to effectuate prompt, fair, and equitable settlement of the Claim in which liability had become reasonably clear based on the estimates, reports, and other evidence provided by Plaintiffs at the request and invitation of the Defendant;

k.  Intentionally refusing to review or consider the significant amount of evidence regarding the extent of damage to the Property and the value of the Claim provided by Plaintiffs or to incorporate such evidence into its adjustment of the Claim, despite repeatedly and expressly informing Plaintiffs that it would do so;

l.  Ignoring the Sworn Proof of Loss Statement provided by the Plaintiffs and the detailed repair estimates provided contemporaneous and subsequent thereto;

m.  Failing to provide any explanation or communication to Plaintiffs regarding why the evidence provided by Plaintiffs and its own expert was insufficient to alter Defendant's denial of Plaintiffs' Claim, despite the fact that such evidence overwhelmingly showed that the Property's roofing structure was damaged and that replacement was covered by the Policy;

n.  Failing to adopt and implement reasonable standards for the prompt investigation and adjustment of claims arising under its policies, including the Claim, and for resolution of those claims under its policies, including the Policy;

o.  Purposely refusing to abide by its own standards for prompt investigation and adjustment of claims arising under its policies and attempting to manipulate those procedures for its own benefit;

p.  Refusing to consider, review, incorporate, or respond to the evidence provided by Plaintiffs in good faith, and otherwise delaying payment of the Claim; and

q.  Other particulars as will be adduced through further investigation, discovery, or at trial.

49.  More particularly, with Defendant's actual and/or constructive knowledge of Plaintiffs' damages and coverage therefore, Defendant unfairly and unlawfully failed to promptly

investigate, adjust and pay the Claim in violation of North Carolina law, N.C.G.S. § 58-63, and Chapter 75 of the North Carolina General Statutes. The factually specific statutory violations, in part, are outlined above and said violations, in part, correspond to violations of provisions of North Carolina law found from N.C.G.S. § 58-63-15(11)(a) through N.C.G.S. § 58-63-15(11)(n).

50. Defendant's above-described conduct, in violation of N.C.G.S. § 58-63-15(11), is a per se violation of N.C.G.S. § 75-1.1.

51. The conduct of the Defendant directly violates N.C.G.S. § 75-1.1 in that its acts were unfair, unscrupulous, immoral, deceptive, oppressive, and substantially injurious to Plaintiffs and was an inequitable assertion of its power and position over Plaintiffs under the circumstances.

52. The above-described conduct of the Defendant was not based upon honest disagreement or innocent mistake.

53. The above-described conduct of Defendant was committed intentionally, willfully, and with malice toward Plaintiffs.

54. Defendant's actions were accomplished by aggravating or outrageous conduct, including malice, oppression, and reckless or wanton disregard of Plaintiffs' rights.

55. Defendant's unfair and deceptive trade acts or practices were in or affecting commerce.

56. As a proximate result of Defendant's unfair claim settlement practices and unfair and deceptive trade acts and practices, Plaintiffs have suffered damages in an amount equal to the benefits currently due under the Policy as well as additional damages to be proven at trial.

57. Pursuant to N.C.G.S. § 75-16, Plaintiffs are entitled to treble its damages.

58. Pursuant to N.C.G.S. § 75-16.1, Plaintiffs are entitled to an award of reasonable attorney's fees.

59. Plaintiffs' damages are not presently fully capable of admeasurement, but in any event far exceed this Court's jurisdictional threshold of $25,000.

**WHEREFORE**, Plaintiffs pray that the Court enter Judgment as follows:

1. That Plaintiffs have and recover of Defendant a sum equal to the amount equal to the benefits due under the Policy, as well as consequential, incidental, compensatory, and other contractual damages to be proven at trial;

2. That Plaintiffs be awarded treble its damages as provided by N.C.G.S. §§ 75-1.1 and 75-16, or at Plaintiffs' election, punitive damages;

3. That the Court tax prejudgment interest on the award and post judgment interest on the entire judgment as permitted by law;

4. That the Court tax the costs of this action, including Plaintiffs' attorney's fees as provided by the common law and the North Carolina General Statutes, including but not limited to Chapter 75 and 58 thereof, against Defendant;

5. That all issues of fact be tried by a jury; and

6. That Plaintiffs have such other and further relief as the Court may deem just and proper.

This the 12th day of July, 2021.

**HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS, P.A.**

By: /s/ Robert H. Jessup
Robert H. Jessup (State Bar No. 42945)
5410 Trinity Road, Suite 210
Raleigh, North Carolina 27607
Telephone: (919) 821-7700
rjessup@hsfh.com
*Attorney for Plaintiff*